Carter C. White, CBN #164149
ccwhite@ucdavis.edu
U.C. Davis Civil Rights Clinic
One Shields Avenue, Bldg. TB-30
Davis, CA 95616-8821
Telephone: 530.752.5440
Facsimile: 530.752.5788

*Listing continued on next page*
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| KEIANA ALDRICH, | Case No: |
| Plaintiff, | **COMPLAINT** |
| vs. | Jury Trial Demanded |
| DAVID SANCHES, MOLLY HILL, SHANNON STARK, and RICHARD MONTES, | |
| Defendants. | |

*Attorneys for Plaintiff, continued*

Maggy Krell, CBN #226675
MaggyKrell@gmail.com
1824 29th Street
Sacramento CA 95816
Telephone: 916.529.0468

Jenny C. Huang, CBN #223596
jhuang@justicefirst.net
Jessica T. Arena, CBN #301807
jarena@justicefirst.net
JUSTICE FIRST
180 Grand Avenue, Suite 1300
Oakland, CA  94612
Telephone: 510.628.0695
Facsimile: 510.318.770

Plaintiff KEIANA ALDRICH complains and alleges as follows:

## **INTRODUCTION**

1. This case arises out of the sexual assault, exploitation, battery, abuse, and harassment Plaintiff KEIANA ALDRICH ("ALDRICH") was subjected to by Defendant DAVID SANCHES ("SANCHES"), a California Department of Correction and Rehabilitation ("CDCR") Correctional Officer, while serving as a state prisoner at the California Institution for Women ("CIW").

2. Defendants MOLLY HILL, RICHARD MONTES, and SHANNON STARK maintained a custom, policy, and practice of ignoring, condoning, and/or encouraging the sexual abuse of inmates by corrections staff at CIW and were deliberately indifferent to the substantial risk of sexual abuse of female prisoners, including Plaintiff ALDRICH. Upon information and belief, Defendants HILL, MONTES, and STARK knew or should have known of the sexually predatory behavior of Defendant SANCHES, yet failed to promptly report, investigate, and correct the behavior, or prevent further sexual abuse of Plaintiff ALDRICH.

3. Instead, Defendants HILL, MONTES, and STARK protected, ratified, and/or encouraged the sexual misconduct by Defendant SANCHES. Defendants HILL, MONTES, and STARK failed to protect Plaintiff ALDRICH from retaliation for reporting the sexual misconduct by CIW

staff, and instead, facilitated an investigation of Plaintiff ALDRICH, resulting in loss of custody credits and a referral for criminal prosecution.

4. As a result of Defendants HILL, MONTES, and STARK's deliberate indifference to a culture of sexual abuse at CIW, and sexual abuse and harassment targeted at Plaintiff ALDRICH, Plaintiff ALDRICH suffered from severe depression, anxiety, pain and suffering, disciplinary violations and punishment, loss of human dignity, and loss of security.

5. During his time as Associate Warden and after stepping in as Acting Warden after Defendant HILL's departure, Defendant MONTES protected, ratified and/or encouraged the sexual misconduct by Defendant SANCHES.

6. Defendant MONTES continued to maintain a custom, policy, and practice of ignoring, condoning, and/or encouraging the sexual abuse of inmates by corrections staff at CIW and was deliberately indifferent to the substantial risk of sexual abuse of female prisoners, including Plaintiff ALDRICH. Upon information and belief, Defendant MONTES knew or should have known of the sexually predatory behavior of Defendant SANCHES, yet failed to promptly report, investigate, and correct the behavior, or prevent further sexual abuse of Plaintiff ALDRICH.

## **PARTIES**

7.  Plaintiff KEIANA ALDRICH ("ALDRICH") is a sex trafficking survivor, who was prosecuted as an adult, at age 17, for crimes arising from her sexual exploitation. At all relevant times, Plaintiff ALDRICH remained under the care and custody of correctional officers and/or employees at CIW. She was released from prison on November 5, 2020. At the time she brings this action, Plaintiff ALDRICH is not a "prisoner" as defined in the Prison Litigation Reform Act, 42 U.S.C. § 1997e(h).

8.  Defendant DAVID SANCHES ("SANCHES") was at all relevant times a correctional officer for CDCR, who was assigned to work at CIW. He was responsible for the provision of safe custody and care of inmates. At all relevant times, he was acting under color of state law, in the course and scope of his employment, and is being sued in his individual capacity. He was terminated from CDCR employment on August 26, 2020.

9.  Defendant MOLLY HILL ("HILL") was the Warden of CIW at all relevant times until her departure from CIW in or around November 2019. As CIW Warden, she was responsible for the supervision and administration of the prison, including but not limited to the provision of safe custody and care of inmates. Defendant HILL was also responsible for supervising custody staff who worked at CIW, including Defendant SANCHES. She knew or should

5

have known about the sexual misconduct and retaliation by Defendant SANCHES and failed to prevent further harm to Plaintiff ALDRICH. At all relevant times, she was acting under color of state law, in the course and scope of her employment, and is being sued in her individual capacity.

10. Defendant SHANNON STARK ("STARK") is and was at all relevant times the PREA Coordinator of CDCR. She is and was responsible for maintaining a program to address the education, prevention, detection, response, investigation, and tracking of sexual misconduct in CDCR. At all relevant times, she was acting under color of state law, in the course and scope of her employment, and is sued in her individual capacity.

11. From November 2019 to December 2020, Defendant RICHARD MONTES ("MONTES") was the Acting Warden of CIW and in that capacity, had the same responsibilities previously held by Defendant HILL. Prior to becoming Acting Warden, Defendant MONTES was Associate Warden for Defendant HILL, and at relevant times was responsible for reviewing inmate 602 appeals alleging staff sexual misconduct. At all relevant times, Defendant MONTES was acting under color of state law, in the course and scope of his employment, and is being sued in his individual capacity.

## JURISDICTION AND VENUE

12. This Court has jurisdiction under 28 U.S.C. §1331 (federal question) and §1343 (civil rights).

13. Pursuant to 28 U.S.C. § 1391, venue is appropriate in this district because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS

14. In early June 2019, Defendant SANCHES began sexually abusing and harassing Plaintiff ALDRICH after he was assigned to work in her housing unit, Miller B. At no time did Plaintiff ALDRICH give valid, lawful consent to any of the sexual contact she had with Defendant SANCHES.

15. Defendant SANCHES began frequently going to Plaintiff ALDRICH's room and talking to her by the window in the bunk area while doing hallway checks. He told Plaintiff ALDRICH that he was bored with his wife, that his daughter was autistic, and that he would bring ALDRICH alcohol, gum, and jewelry in exchange for sex acts.

16. The first instance of sexual abuse by Defendant SANCHES occurred after Defendant SANCHES followed Plaintiff ALDRICH into her room and touched her breasts and groped her vagina outside her underwear.

17. Defendant SANCHES gave Plaintiff ALDRICH letters in which he told Plaintiff ALDRICH that he liked her and that she was "his." One letter from

7

Defendant SANCHES said that he was going to have sex with Plaintiff ALDRICH, and that he wanted to have a baby with her. Plaintiff ALDRICH believes that while Defendant SANCHES wrote his letters with his right hand, he wrote the last letter to her using his left hand to disguise his identity in case her cell was searched, and the letter was found.

18. A few weeks later, Defendant SANCHES sent Plaintiff ALDRICH a note offering her and her bunkmate Heidi Scipione a cellphone, tobacco, and candy in exchange for performing sexual acts on each other in his presence.

19. Defendant SANCHES also gave Plaintiff ALDRICH his email address and demanded that she send him nude pictures of Plaintiff. He promised to give her candy and jewelry in exchange for the nude pictures, but instead gave her candy bars, gum, and a peanut butter and jelly sandwich.

20. On August 25, 2019, Plaintiff ALDRICH'S bunkmate, Heidi Scipione, wrote a letter to Defendant SANCHES, threatening to report him for sexual misconduct. Defendant SANCHES turned in this letter to his superiors, falsely alleging that he was a victim of extortion by Plaintiff ALDRICH and Ms. Scipione.

21. On or around August 25, 2019, investigators came to Plaintiff ALDRICH's cell and took all her letters, notes, and her tablet. Plaintiff ALDRICH and her bunkmate, Heidi Scipione, were both questioned. Plaintiff ALDRICH

was questioned by investigators who, during the interview, told her, "We are here for Sanches."

22. During the interview, Plaintiff ALDRICH reported that she was sexually abused by Defendant SANCHES. Upon information and belief, the investigators failed to report the rape pursuant to the Prison Rape Elimination Act ("PREA") and instead interrogated Plaintiff ALDRICH about the alleged extortion against Defendant SANCHES.

23. After reporting the PREA violation against Defendant SANCHES, Plaintiff ALDRICH was confined in Administrative Segregation, in violation of CDCR policies prohibiting segregated housing of PREA victims.

24. As further retaliation for reporting Defendant SANCHES for sexual misconduct, Plaintiff ALDRICH was charged on October 1, 2019 with a rule violation for extortion by means of threats towards a public official (Defendant SANCHES).

25. By letter, dated October 18, 2019, the Prison Law Office ("PLO") notified Defendant HILL about the sexual abuse by Defendant SANCHES and the retaliatory actions against Plaintiff ALDRICH for reporting the sexual misconduct. The PLO letter also notified Defendant HILL that Defendant SANCHES had told Plaintiff ALDRICH that he had "done this before." The PLO requested, and Defendant HILL declined, to dismiss the pending rule

violation against Plaintiff ALDRICH. By failing to intervene, Defendant HILL condoned and encouraged the retaliatory actions against Plaintiff ALDRICH.

26. On or about October 28, 2019, Plaintiff ALDRICH was adjudicated to have violated a prison regulation prohibiting extortion by means of force or threat. 15 Cal. Code of Reg. § 3005(d). As a result, Plaintiff ALDRICH lost 180 days of confinement credit and was sentenced to be confined in Administrative Segregation for up to 7 months.  Plaintiff ALDRICH was also threatened with criminal prosecution for the alleged extortion against Defendant SANCHES.

27. Upon information and belief, Defendant HILL failed to refer the allegations of sexual misconduct against Defendant SANCHES to CDCR's Office of Internal Affairs, as required by CDCR regulations and prison policies.

28. In or around November 2019, Defendant HILL departed from her position as Warden of CIW and was replaced by Defendant MONTES.

29. On December 26, 2019 Plaintiff ALDRICH submitted a 602 Inmate Appeal requesting the RVR against her be dismissed because it was retaliation for reporting sexual misconduct of CIW staff, referring to the physical evidence of Defendant SANCHES' misconduct such as the photos he requested and the letters he wrote.

30. On information and belief, it was not until December 26, 2019 that Plaintiff ALDRICH received a "Rights and Responsibilities Statement" advising her of her right to make a complaint against a peace officer. The statement was then signed by Plaintiff ALDRICH and Defendant SANCHES.

31. Pursuant to CDCR regulations and prison policies, Defendant MONTES was or should have been immediately notified about the PREA violations included in the 602 appeal by Plaintiff ALDRICH.

32. On April 17, 2020, Plaintiff ALDRICH submitted another 602 appeal reporting allegations of sexual misconduct against Defendant SANCHES.

33. Pursuant to CDCR regulations and prison policies, all allegations of sexual misconduct against prison staff must be immediately referred to the Office of Internal Affairs, an external agency responsible for investigation allegations against CDCR staff. In response to Plaintiff ALDRICH's 602 appeal, Defendant MONTES improperly authorized CIW's internal investigations unit, the Investigative Services Unit, which is comprised of CIW correctional staff who were familiar with Defendant SANCHES, to conduct the investigation against Defendant SANCHES.

34. CDCR employees have a responsibility to protect incarcerated women in their custody. According to the Department Operations Manual, "All staff are responsible for reporting immediately and confidentially to the

appropriate supervisor any information that indicates an offender is being, or has been the victim of sexual violence, staff sexual misconduct, or sexual harassment. In addition to reporting, employees have a responsibility to assist the offender and refer him/her to medical/mental health for evaluation. Staff shall ensure the reporting of information is done as soon as possible and in a confidential manner." DOM § 54040.7. Despite the clear duty to immediately act in response to allegations of staff sexual misconduct has occurred, Plaintiff ALDRICH was not notified of her right to a victim's advocate. Plaintiff ALDRICH had to complain about this lack of support and assert her right to an advocate before CIW would provide her access to one. Plaintiff ALDRICH was also not referred for a suicide risk evaluation and did not see a psychiatrist.

35. Plaintiff ALDRICH suffered continued harassment and retaliation from CDCR employees after reporting Defendant SANCHES for sexual misconduct. Male sergeants asked her "who her next victim is." One lieutenant called her a "massive manipulator" and told her he "will send her to jail."

36. The actions of Defendant SANCHES, the harassment from other CDCR employees, the previous incidents of staff sexual misconduct carried out against Plaintiff ALDRICH, as well as the actions and inactions of

Defendants HILL and MONTES made Plaintiff ALDRICH feel unsafe at CIW.

37. In February 2020, Plaintiff ALDRICH requested to be moved to a different housing unit, one with female staff, because she felt unsafe and harassed in her housing unit with an all-male staff. This request was denied, in violation of CDCR policies mandating housing alternatives for PREA victims. Department Operations Manual (DOM) § 54040.7.

## SUPERVISORY DEFENDANTS

38. CIW has a long history, dating back several decades, as a prison that is infested with male staff who engage in horrific acts of sexual abuse of female prisoners.

39. In 1990, a newspaper reported that Harold Anderson, the son of a former CIW Warden, forced at least 10 CIW prisoners into sexual relations. It was not until prison guards reported finding Anderson in "compromising positions" on at least three occasions that any action was taken against him. A female guard who exposed his actions was harassed and subjected to retaliation by other guards. The California Department of Corrections initially treated Anderson's actions as a "personnel matter" and did not refer him for criminal prosecution. Eventually, in 1992, Anderson was sentenced to eight years in prison for sexually abusing several prisoners at CIW.

40. In 1999, the San Francisco Chronicle reported multiple incidents where female prisoners were impregnated by male staff at CIW. Cassandra Shaylor, *Corrupt Prison Culture: State must stop daily abuses of female inmates*, S.F. CHRONICLE, Nov. 8, 1999, at A26.

41. In 2002, Jasper Ayala, a corrections officer at CIW, forced an inmate to orally copulate him. He was placed on administrative leave and pled nolo contendere to two felony charges. *Ayala v. Cal. Dept. of Corrections and Rehabilitation*, 2008 Cal.App. Unpub. LEXIS 312.

42. The Bureau of Justice Statistics reported that as many as eight percent of inmates at CIW had been sexually victimized by staff in 2011-2012. This was the second-highest rate reported in any California prison, and the highest rate among the women's prisons in the state. Bureau of Justice *Statistics, U.S. Department of Justice, Sexual Victimization in Prisons and Jails Reported by Inmates, 2011-2012*, p. 49.

43. From 2010-11, two CIW prisoners were repeatedly raped by a corrections officer and in 2012, one of those prisoners gave birth to his child. *Ramos v. Swatzell,* Case No. 5:12-cv-01089-BRO-SP, ECF No. 118 at ¶¶ 21-23, 44, 46. In 2011, the corrections officer was convicted of a single felony count for sexual activity with the prisoner who gave birth to his child. *Id.* at ¶ 46.

44. Throughout 2018, Plaintiff ALDRICH was sexually abused repeatedly by CDCR employees. Specifically, in 2018, Plaintiff ALDRICH was subjected to separate incidents of sexual misconduct by three CDCR staff: Samuel Navarro, Gerardo Romo, and Ivan Ordaz. Between June of 2018 and November 2018, while Plaintiff ALDRICH was working at the Health Management Facility, each of these three employees tasked with supervising Plaintiff ALDRICH, subjected her to sexual abuse and humiliation. Gerardo Romo, for example, coerced Plaintiff ALDRICH into an office closet and forced her to orally copulate him. *See Aldrich v. Romo, et al.,* No. 5:20-cv-00974-MCS-KK (C.D. Cal.), ECF No. 94, ¶ 30.

45. After Plaintiff ALDRICH reported the sexual misconduct in December 2018, she was terminated from her job.

46. As CIW Warden, Defendant HILL was required to be immediately notified about all allegations of sexual misconduct by staff. DOM § 54040.8.1.

47. Defendant HILL was required to conduct an incident review of every allegation of staff sexual misconduct, even those that had not been substantiated. DOM § 54040.17.

48. In his capacity as Associate Warden, Defendant MONTES reviewed the second level 602 appeal of Plaintiff ALDRICH's allegations of sexual misconduct against Ivan Ordaz in late June/early July 2019.

49. From 2016-2019, Defendant HILL failed in her responsibilities to ensure PREA compliance at CIW or protect Plaintiff ALDRICH from sexual abuse.

50. In addition to the instances involving Plaintiff ALDRICH, from 2018-2019, Defendant HILL was aware of 38 incidents of staff sexual misconduct. Defendant HILL failed to find that any one of those cases was substantiated and no criminal investigation resulted from any of the 38.

51. In their capacity as Warden and Associate Warden, Defendants HILL and MONTES knew in 2018 that Plaintiff ALDRICH was at risk as a PREA victim. As of April 2019, an inmate precaution was added to Plaintiff ALDRICH's file stating "PREA – at risk as a victim." This statement appears on a Classification Committee Chrono signed by WARDEN HILL who was the chairperson of that committee.

52. Despite the known risk of danger to Plaintiff ALDRICH as a victim of repeated sexual abuse at CIW, Defendants HILL and MONTES failed to protect her from sexual misconduct by other staff, including Defendant SANCHES.

53. Once they were notified of Plaintiff ALDRICH's complaints of sexual misconduct against Defendant SANCHES, Defendants HILL and MONTES failed to take appropriate action to protect Plaintiff ALDRICH from further harm and retaliation.

16

54. As alleged above, Defendants HILL and MONTES failed to properly escalate Plaintiff ALDRICH's complaints of sexual misconduct against Defendant SANCHES to CDCR's Office of Internal Affairs. Instead, Defendant MONTES violated CDCR regulations and prison policies by referring the allegations of sexual misconduct to CIW's own investigative unit.

55. Throughout her tenure as CIW Warden, from 2016-2019, Defendant HILL had a custom, policy, or practice of ignoring allegations of staff sexual misconduct, resulting in harm to Plaintiff ALDRICH.

56. Defendant HILL also had a custom, policy, or practice of retaliating against CIW prisoners who reported misconduct by CIW staff. *Caruso v. Hill, et al.,* Case No. 1:20-cv-00084 (AWI)(EPG) (E.D. Cal.), ECF Nos. 24, 25 at pp. 4-14; *Ramos v. Swatzell,* Case No. 5:12-cv-01089 (C.D. Cal. 2017), ECF No. 214 at p.5; *Ford v. Spinney,* Case No. 5:18-cv-02132 (C.D. Cal. 2018), ECF No. 66 at n.1; ECF No. 67.

57. Defendant HILL's reputation for transferring CIW prisoners to another prison in Northern California, in retaliation for filing a lawsuit, is so well-known that CIW prisoners preemptively request an injunction to prevent their transfer from CIW, as Warden HILL's punishment for filing a lawsuit.

*See, Daniels v. Hill, et al.,* Case No. 5:18-cv-01730 (PSG)(AS) (C.D. Cal.), ECF No. 1 at p. 32.

58. As the Statewide PREA Coordinator for CDCR, Defendant STARK is and at all times relevant was responsible for developing, implementing, and overseeing CDCR efforts to comply with PREA all prisons, including CIW. DOM § 54040.3.

59. Defendant STARK is required to review, on an annual basis, data collected from prisons "to assess and improve the effectiveness of its sexual violence prevention, detection, and response policies, practices and training." DOM § 54040.17; *see also,* 28 C.F.R., Standard § 115.88.

60. Defendant STARK had responsibilities in monitoring and ensuring that PREA incident reviews were properly conducted.

61. With at least the incident review against Defendant SANCHES, Defendant STARK should have known about Warden HILL's mishandling of PREA incident reviews, as demonstrated by the fact that very few, if any, of the Warden's reviews resulted in substantiated findings or recommendations.

62. As part of her duties as PREA Coordinator, Defendant STARK is charged with the responsibility of taking corrective action on an ongoing basis to ensure PREA compliance. 28 C.F.R., Standard § 115.88.

18

63. The Interim Report provided to CIW on June 11, 2019 as part of the PREA Audit, which was reviewed and signed by Defendant STARK, identified eight standards which required corrective action. Those included agency protection against retaliation, employee training, volunteer and contractor training, and supervision and monitoring, among others.

64. Despite obvious red flags that CIW was ignoring the increasing problem of staff sex misconduct, Defendant STARK failed to intervene and take corrective action to prevent further sexual abuse of CIW's female prisoners, including Plaintiff ALDRICH.

65. Beginning in 2013, California prisons were required to be audited at least once during every three-year period to be considered compliant with PREA standards. 28 C.F.R., Standard §§ 115.401-115.404.

66. Despite the obvious need to prioritize women's prisons in the collection and assessment of sexual misconduct by staff, CIW did not conduct its first PREA audit until 2019, while men's prisons were audited as early as 2016.

67. From 2016-2018, Defendant STARK observed an increase in sexual misconduct in prisons, yet she failed to obtain the data collection needed to address sexual misconduct at CIW until the first audit was conducted in April 2019.

68. Throughout his tenure as Associate Warden and Warden of CIW, Defendant MONTES had a custom, policy, or practice of ignoring allegations of staff sexual misconduct, resulting in harm to Plaintiff ALDRICH.

69. Defendant MONTES also had a custom, policy, or practice of retaliating against CIW prisoners who reported misconduct by CIW staff. *Caruso v. Hill, et al.,* No. 1:20-cv-00084-AWI-EPG) (E.D. Cal.), ECF Nos. 24, 25 at pp. 4-14.

70. Defendants HILL and SANCHES maintained a custom, practice, and/or official policy at the CIW of ignoring, condoning, and/or encouraging the sexual abuse of inmates by correctional employees including Defendant SANCHES.

71. Defendants HILL and SANCHES were deliberately indifferent to the substantial risk of sexual abuse of Plaintiff ALDRICH and to the retaliatory conduct directed at her by Defendant SANCHES' misguided extortion claim.

72. Defendants HILL and SANCHES acted individually and/or conspired to protect, condone, ratify, and/or encourage Defendant SANCHES' sexual misconduct and to retaliate or threaten to retaliate against Plaintiff ALDRICH if she reported Defendant SANCHES for his illegal conduct.

### **STATEMENT OF DAMAGES**

73. As a result of Defendants' actions, Plaintiff ALDRICH suffered severe emotional trauma, causing her to overdose, physically harm herself, swallow foreign objects, and attempt to hang herself, resulting in her being hospitalized multiple times.

74. On September 11, 2019 Plaintiff ALDRICH attempted suicide by overdose and hanging. She said her trigger was "the officers, I don't trust any of them plus they are punishing me for something I should not be punished for."

75. Weeks after staff were alerted to the sexual abuse of Plaintiff ALDRICH, on September 18, 2019 Plaintiff ALDRICH was finally evaluated for suicide risk.

76. On September 26, 2019 Plaintiff ALDRICH was placed in a psychiatric in patient ("PIP") ward at CIW. A prison health care provider deemed Plaintiff ALDRICH's depression so severe that she was prescribed heavy psychotropic medications to treat it.

77. Plaintiff ALDRICH had attempted suicide in the past as noted in an Inmate Segregation Profile form dated March 14, 2017. Yet subsequent Inmate Segregation Profile forms in 2017 and 2018 marked "No" for "Prior Suicide Attempts," despite the risk of misinforming prison staff on a critical issue of Plaintiff ALDRICH's safety.

21

78. As a result of Defendants' unlawful conduct, Plaintiff ALDRICH suffered and continues to suffer severe emotional trauma, depression, anxiety, pain and suffering, loss of human dignity, and loss of security.

79. In addition, Plaintiff ALDRICH was retaliated against for being an abuse victim. She was forced out of her cell and stripped of her belongings. She was interrogated in the middle of the night. She was sent to Administrative Segregation. She lost custody credits, adding potential time to her sentence, and causing her further fear and anxiety. She was threatened with criminal prosecution. This retaliatory conduct is especially egregious given her mental health history and vulnerability as a young sex trafficking survivor who has been subjected to sexual abuse multiple times at CIW.

80. The appalling retaliation faced by Plaintiff ALDRICH up until her release from CIW made her feel unsafe and extremely fearful about reporting the sexual misconduct against staff.

81. Defendants' conduct was intentional, willful, malicious, reckless and in conscious disregard of Plaintiff ALDRICH's protected rights, in support of a claim for punitive damages.


**FIRST CAUSE OF ACTION**

**42 U.S.C. § 1983 - Excessive Force, Sexual Assault**

22

**Deprivation of Civil Rights Under Color of State Law – Individual Liability**

**(Against Defendant SANCHES)**

82. The foregoing allegations are incorporated as if re-alleged herein.

83. Defendant SANCHES, acting under color of law and in the scope of his employment, deprived Plaintiff ALDRICH of her constitutional rights under the Eighth Amendment, which include, but are not limited to, the right to be free from cruel and unusual punishment and the right not to be subjected to sexual assault and the unreasonable or unjustified force against one's person. The rights set forth are embodied in clearly established state and federal constitutional law.

84. During all times mentioned herein, Defendants SANCHES' conduct toward Plaintiff ALDRICH was cruel, unusual, unreasonable, unjustified, unlawful, malicious, sadistic, offensive to human dignity, sexually abusive, sexually harassing, without penological justification and for Defendant SANCHES' own gratification.

85. As a direct and proximate result of Defendant SANCHES' unlawful conduct, Plaintiff ALDRICH suffered and continues to suffer injuries and damages as alleged herein.

**SECOND CAUSE OF ACTION**

**42 U.S.C. § 1983 - Supervisory Liability**

**(Against Defendants HILL, STARK, and MONTES)**

86. The foregoing allegations are incorporated as if re-alleged herein.

87. On information and belief, Defendant HILL was employed by CDCR as Warden of CIW.

88. On information and belief, Defendant STARK was employed by CDCR as the agency's PREA Coordinator.

89. On information and belief, Defendant MONTES was employed by CDCR as Association Warden and then Acting Warden of CIW.

90. On information and belief, Defendants were responsible for the supervision of subordinate staff at CIW including, but not limited to, Defendant SANCHES.

91. During all times mentioned herein, Defendants acted under color and pretense of state law, and under color of the statutes, ordinances, regulations, policies, practices, customs, and usages of the CDCR.

92. During all times mentioned herein, the acts and/or failures to act of Defendants HILL, STARK, and MONTES deprived Plaintiff ALDRICH of her rights, privileges, and immunities secured to her by the Eighth Amendment to the United States Constitution and the laws of the United States.

24

93. In willfully committing the acts of sexual misconduct as described in the foregoing paragraphs of this Complaint, Defendant SANCHES, deprived Plaintiff ALDRICH of the rights, privileges, and immunities secured to her by the Eighth Amendment to the United States Constitution and the laws of the United States.

94. Defendants HILL, STARK, and MONTES are responsible under a theory of supervisory liability for the acts and omissions of Defendant SANCHES as alleged herein based on the following:

95. Defendants acting under color of law, have implemented, maintained, encouraged, perpetuated, and/or ratified the custom, practice, or policy of sexual misconduct of inmates by staff at the CIW.

96. Defendants, acting under color of law, as a matter of custom, practice, or policy, failed to maintain adequate and proper training for subordinate staff necessary to educate them as the to the constitutional rights of prisoners. Specifically, Defendants failed to prevent the consistent and systematic use of harassment and assault, failed to take requisite measures to prevent and report staff/prisoner rape, and failed to adequately supervise or control staff.

97. Defendants HILL and STARK knowingly refused to terminate staff that engaged in sexual misconduct with inmates, including Defendant SANCHES. While Defendant SANCHES was ultimately terminated, it was

not until a full year after the incident. In the interim, Plaintiff ALDRICH

continued to suffer.

98. Defendants knew of the violations of Plaintiff ALDRICH's constitutional

rights and failed to act to prevent them, or to take corrective action.

99. Defendants HILL, STARK, and MONTES showed a reckless or callous

indifference to the deprivation of the rights of Plaintiff ALDRICH.

100.     The individual Defendants named herein, separately and in concert,

acted willfully, knowingly, with reckless disregard and deliberate

indifference to the known consequences of their acts and omissions, and

purposefully with the intent to deprive Plaintiff ALDRICH of her federally

protected rights and privileges, and did in fact violate those rights and

privileges, entitling Plaintiff ALDRICH to punitive and exemplary damages

in an amount to be proven at the trial of this matter.

101.     As a direct and proximate result of the constitutional violations,

Plaintiff ALDRICH suffered and continues to suffer injuries and damages as

alleged herein.


**THIRD CAUSE OF ACTION**

**42 U.S.C. § 1983 - Retaliation**

**(Against All Defendants)**

26

102.     The foregoing allegations are incorporated as if re-alleged herein.

103.     Plaintiff ALDRICH has a First Amendment right to be free from retaliation for participating in protected speech activities.

104.     Defendants retaliated against Plaintiff ALDRICH by failing to act on her reports of sexual abuse and instead pursuing extortion claims against her.

105.     Defendants HILL, STARK, and MONTES failed to adhere to mandated PREA processes intended to prevent and identify retaliation.

106.     Defendants' retaliatory action did not advance legitimate goals of the correctional institution.

107.     Defendants' retaliation caused Plaintiff ALDRICH to suffer harm and economic damages for loss of past and future earnings, loss of earning capacity, loss of such employment related opportunities as the opportunity for advancement and promotion, in amounts according to proof at trial.

108.     As a direct and proximate result of the unlawful conduct by Defendants, Plaintiff ALDRICH suffered and continues to suffer injuries and damages as alleged herein.

**JURY TRIAL DEMAND**

109.     Plaintiff ALDRICH hereby requests a jury trial in this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff ALDRICH prays for the following relief:

1. For general and compensatory damages in an amount according to proof at trial;

2. For punitive and exemplary damages against each defendant in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct;

3. For costs of suit and reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and as otherwise authorized by statute or law;

4. For such other relief as the Court may deem just, proper, and appropriate.

Dated: April 2, 2021                    Respectfully submitted,

**/s/ Carter C. White**

UC Davis School of Law
Civil Rights Clinic

**/s/Maggy Krell**

**/s/ Jenny C. Huang**

JUSTICE FIRST

Attorneys for Plaintiff, Keiana Aldrich

28